IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOY REASNOVER, as Independent Administrator of the Estate of MARVELL REASNOVER, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF COOK, ILLINOIS, THE SHERIFF OF COOK COUNTY, SERGEANT EDGAR LOPEZ #3355, CORRECTIONAL OFFICER DAVID DEANDA #18952, CORRECTIONAL OFFICER REINALDO SANCHEZ #18670 and UNKNOWN AGENT(S),<br><br>Defendants. | Case No. 24-cv-1827<br><br>Judge Jeffrey I. Cummings |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joy Reasnover, as Independent Administrator of the Estate of her son Marvell Reasnover, brings this action pursuant to 42 U.S.C. §1983 against Cook County, Sherrif Thomas Dart, and certain known and unknown Cook County Correctional Officers (collectively, "defendants" or "Cook County defendants"). Plaintiff's claims arise out of Marvell's death while he was a pretrial detainee at Cook County Jail. Plaintiff maintains that Marvell was killed by his cellmate, Darnell Rawls, who has been criminally charged for the murder. Defendants have filed a motion to stay this case pending the resolution of Rawls' state court criminal prosecution for the murder of Marvell pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), or alternatively, the Court's inherent power. (Dckt. #37). For the reasons set forth below, defendants' motion to stay is denied.

I.       BACKGROUND

At all relevant times, Marvell was a pretrial detainee at Cook County Jail. (Dckt. #36 ¶16). On February 2, 2023, Darnell Rawls was transferred to the Cook County Jail pending trial for his role in the September 2022 murder of Michael Byrnes. (*Id*. ¶18). According to plaintiff, Rawls had a known history of mental illness, including hearing homicidal voices and suicidal thoughts, along with a history of violent altercations with other inmates. (*Id*. ¶¶22-25, 29-34). At some point in late February 2023, defendants moved Rawls to Marvell's cell, #1202, Tier 1E, Division 9. (*Id*. ¶¶26, 40).

On the afternoon of March 2, 2023, defendant Officers DeAnda and Sanchez were responsible for performing rounds on Tier 1E. (*Id*. ¶¶41, 44). Officer DeAnda purportedly checked Marvell and Rawls' cell around 3:30 p.m. (*Id*. ¶41). At that time, the interior view of the cell was obstructed to the officers on the outside because a mattress was covering the cell door window. (*Id*. ¶47). Officer DeAnda allegedly attempted to look into the cell with a flashlight, but ultimately left the tier without opening the door to check on Marvell and Rawls. (*Id*. ¶45).

A few hours later, around 5:00 p.m., Officers DeAnda and Sanchez returned to the cell and noticed blood spilling from under the cell door. (*Id*. ¶52). They opened the door to find Marvell "unresponsive, right eye punctured and swollen, teeth knocked out, signs of strangulation around his neck, both arms broken at each elbow, and laying in a pool of blood with his mouth locked shut." (*Id*. ¶53). Upon arrival, Chicago Fire Department EMS noted that Marvell was in "complete cardiac arrest, with fixated/dilated eyes, and that rigor mortis was present in [Marvell's] jaw." (*Id*. ¶55). Rawls allegedly stated to the defendant Officers that he killed Marvell because of the voices in his head. (*Id.* ¶54).

In his fourth amended complaint, plaintiff brings claims against Cook County, Sheriff Dart, and certain correctional officers for failure to protect in violation of his Fourteenth Amendment rights, civil conspiracy under federal and state law, and intentional infliction of emotional distress. The separate criminal cases against Rawls for the murders of Marvell and Michael Byrnes are ongoing. According to communications from the Assistant Cook County State's Attorney assigned to those cases, the State has elected to proceed with first prosecuting the murder of Michael Byrnes before proceeding with the prosecution for Marvell's murder. (Dckt. #40-2). As of January 2025, no trial date had been set for the Byrnes case and the Court was exploring Rawls' fitness to stand trial. (Dckt. #40-4).

## II. ANALYSIS

Defendants now move the Court to stay this case pending the resolution of Rawls' criminal case concerning the murder of Marvell pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), or alternatively, the Court's inherent power. Plaintiff asserts that a stay is inappropriate under either theory and the Court agrees.

### A. *Younger* abstention is not appropriate because the litigation of plaintiff's Section 1983 claims will not undermine the ongoing criminal proceedings against Rawls.

As a general matter, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" and "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976). Abstention may be appropriate, however, in certain narrow and exceptional circumstances, such as those articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971). "The *Younger* doctrine requires federal courts to abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings." *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010). The doctrine is designed to

3

"permit state courts to try state cases free from interference by federal courts . . . [and] ensures that individuals or entities who have violated state laws cannot seek refuge from enforcement of those laws behind the equitable powers of the federal courts." *Forty One News, Inc. v. Cnty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007) (cleaned up). As such, "[i]f a person is believed to have violated a state law, the state has instituted a criminal, disciplinary, or other enforcement proceeding against him, and he has a federal defense, he cannot scurry to federal court and plead that defense as a basis for enjoining the state proceeding." *Nader v. Keith,* 385 F.3d 729, 732 (7th Cir. 2004).

"*Younger* abstention originally required federal courts to abstain [only] when a criminal defendant seeks a federal injunction to block his state court prosecution on federal constitutional grounds." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018). The "doctrine has been expanded and now applies to federal claims for damages when the federal claims 'are potentially subject to adjudication' in the state criminal proceeding." *Hill v. City of Hammond, Ind.*, No. 2:10-CV-393-JTM-PRC, 2012 WL 5304177, at *3 (N.D.Ind. Oct. 25, 2012), *quoting Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995).[1] Nonetheless, *Younger* abstention is still "appropriate only when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." *Forty One News*, 491 F.3d at 665.

To begin, defendants' steadfast reliance on *Younger* misses the mark because there is no pending state court action against the federal plaintiff, i.e., Reasnover on behalf of her deceased son, nor could there be. Instead, the state court criminal prosecution is against Rawls, Marvell's

---

[1] *Younger* abstention also applies where federal jurisdiction would intrude "into certain civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (cleaned up). This extension of *Younger* is not at issue here.

4

alleged murderer, and *Younger* is thus not as clearly in play as defendants maintain. *SKS & Assocs.*, 619 F.3d at 678 ("In the pending state eviction actions, SKS is not a target of any effort to enforce state law. It is not even a defendant. Therefore, *Younger* abstention as we currently understand it does not completely fit here."); *see also Bembenek v. Donohoo*, 355 F.Supp.2d 942, 957 (E.D.Wis. 2005) ("*Younger* will apply most often in circumstances in which the state court proceeding is an enforcement action against the federal court plaintiff, and the federal action seeks to enjoin, declare invalid or otherwise involve the federal courts in terminating or truncating the state proceeding."). Of course, the Court acknowledges that in *SKS v. Dart*, the Seventh Circuit ultimately held that *Younger* abstention was required even though the federal plaintiff was not a target of any effort to enforce state law. But there, unlike here, the federal plaintiff sought "to have a federal court tell state courts how to manage and when to decide a category of cases pending in the state courts" which "would reflect a lack of respect for the state's ability to resolve the cases properly before its courts." *SKS*, 619 F.3d at 679. Plaintiff seeks no such relief in this action.

Similarly, the Court distinguishes this case from *Horton v. Pobjecky*, No. 12 C 7784, 2013 WL 791332 (N.D.Ill. Mar. 4, 2013), relied upon by defendants in support of a *Younger* stay. There, the Administrator of the Estate of Michael Sago brought a §1983 excessive force and wrongful death action against an off-duty officer (among others) who shot Sago while he, along with three other individuals, were committing a robbery at a restaurant. Defendants moved to stay the federal case until the resolution of the criminal case against the other three individuals involved in the robbery. The Court granted defendants' request under *Younger*. In doing so, however, the Court acknowledged that but for Sago's death during the commission of the robbery, he too would have been a defendant in the ongoing criminal case. *See Horton*, 2013

WL 791332, at *2 ("Because of his death, no charges were brought against Sago"). In contrast, Marvell is not, and could never be, a co-defendant in a criminal prosecution concerning his *own* murder.

Furthermore, defendants have failed to make the showing necessary to obtain a stay under *Younger*. In particular, *Younger* requires federal courts to stay a civil rights action only where the proponent of a stay has shown that the ongoing state proceeding is: "(1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances – like bias or harassment – exist which auger against abstention." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596 (7th Cir. 2007). Moreover, before considering these factors, "a court must determine whether the federal relief sought would in fact interfere in some manner in the state court litigation." *Bembenek*, 355 F.Supp.2d at 957. Indeed, "[i]f the federal action is unlikely to interfere with the state proceeding, abstention serves no useful purpose." *Id*.

Here, plaintiff's §1983 claims against the Cook County defendants for failure to intervene will not interfere with the State's criminal prosecution of Rawls for Marvell's murder and *Younger* abstention would therefore serve no useful purpose. *See Bembenek*, 355 F.Supp.2d at 957 (abstention not appropriate where "plaintiff's §1983 action will not interfere with whether a state court grants or denies plaintiff's request for DNA testing"). This result is further supported upon a consideration of the *Younger* factors. While the criminal case against Rawls is judicial in nature and implicates the important state interest of prosecuting violent criminals, the criminal case will not offer plaintiff an adequate opportunity – or *any* opportunity for that matter – for review of her constitutional claims against the Cook County defendants for failing to protect Marvell.

6

For all of these reasons, the Court in its discretion denies' defendants' request for a stay under *Younger*.

**B. A stay is not appropriate under the Court's inherent power.**

This Court also has the inherent power to stay civil proceedings "when the interests of justice so dictate." *Doe v. City of Chicago*, 360 F.Supp.2d 880, 881 (N.D.Ill. Jan. 18, 2005) (citing cases). In determining whether to stay civil proceedings in the face of ongoing criminal proceedings, courts consider the following factors: "(1) whether the two actions involved the same subject matter, (2) whether the two actions are brought by the government, (3) the posture of the criminal proceeding, (4) the public interests at stake, (5) the plaintiff's interests and possible prejudice to the plaintiff, and (6) the burden that any particular aspect of the proceedings may impose on the defendants." *Id*. These factors, on the whole, weigh strongly against a stay.

First, at a minimum, the two cases involve the same subject matter, i.e., the murder of Marvell at Cook County Jail. Notably, however, even if Rawls is not ultimately convicted of Marvell's murder, plaintiff's claims against the Cook County defendants – for failing to protect him from dying while in their custody – could certainly proceed. Thus, "unlike situations where the 'same events' form the basis of the criminal and civil actions, proof of the criminal charges against [Rawls] would not dictate the outcome of [plaintiff's] Section 1983 claims against defendants, and vice-versa." *Gonzalez v. Rodriguez*, No. 21-CV-06243, 2023 WL 8004288, at *3 (N.D.Ill. Nov. 17, 2023)

Second, only one (and not both) of these actions – the criminal case against Rawls – was brought by the Government. This matter, on the other hand, was brought by Marvell's mother on behalf of her deceased son.

Third, the status of the criminal proceedings and the resulting prejudice to plaintiff (under

7

the fifth factor) weigh heavily against a stay. Again, the State has elected to first prosecute Rawls for the murder of Michael Byrnes before prosecuting Rawls for Marvell's murder. Defendants do not dispute the State's election in this regard, nor can they guarantee that the State will *ever* prosecute Rawls for Marvell's murder. Indeed, if Rawls is convicted for Byrnes' murder and sentenced to life without parole, the State might elect not to proceed with the case against Rawls for Marvell's murder. A stay in such circumstances – for an indefinite period of time when Rawls may never stand trial for Marvell's murder – would significantly prejudice plaintiff.

As for the fourth factor (the public interest a stake), it is undisputed that there is a strong public interest in prosecuting Rawls for two violent murders. But so too is there a strong public interest in the prompt resolution of the civil constitutional claims of an inmate killed while in the custody of the Cook County Sheriff's Department. *See generally, Robinson v. Wood*, No. 2:20-cv-02341-SLD-JEH, 2021 WL 354460, at *3 (C.D.Ill. Feb. 2, 2021) ("[T]he public has an interest in the prompt disposition of civil litigation.").

With respect to the sixth and final factor, defendants have not identified any significant burden they would face if the litigation of this civil case proceeds. While this case will likely involve much of the same evidence, witnesses, and documents as the criminal case, there is no indication – beyond defendants' pure speculation – that proceeding with this case will significantly impact the ongoing criminal proceedings or otherwise burden defendants in defending themselves in this case. Of course, to the extent any specific concerns arise in the future, "the parties are reminded that there are mechanisms available to control the scope of discovery as well as the parties' conduct during the litigation of the case." *Robinson*, 2021 WL 354460, at *3.

Finally, defendants' reliance on Fifth Amendment protections to support a stay are misplaced where it is *Rawls*' Fifth Amendment privilege at issue, and not the Fifth Amendment privilege of any party to *this* case. *Cf. Doe*, 360 F.Supp.2d at 881 ("Because of the criminal charges against Sergeant Herman, his Fifth Amendment privilege is potentially threatened by defending this civil suit on the same subject matter as the criminal proceeding [against *him*]."). To be sure, even if Rawls pleads the Fifth in any forthcoming deposition in this case – thereby potentially impeding defendants' ability to gather certain information – this slight prejudice pales in comparison to the prejudice plaintiff would face if a stay was granted.

For all of these reasons, the Court in its discretion denies defendants' request to stay under the Court's inherent power.

## CONCLUSION

For the foregoing reasons, defendants' motion to stay, (Dckt. #37), is denied and this case shall proceed.

**DATE: June 12, 2025**

                                                    **Jeffrey I. Cummings**
                                                     **United States District Court Judge**